IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| UNITED STATES OF AMERICA | ) |                              |
|---|---|---|
|                          | ) |                              |
| v.                       | ) | Criminal No. 3:18-CR-101–HEH |
|                          | ) |                              |
| GUSTAVO PEREZ-PAZ,       | ) |                              |
|                          | ) |                              |
| Defendant.               | ) |                              |

## MEMORANDUM OPINION
(Denying Defendant's Motion to Dismiss Indictment)

On August 7, 2018, the Grand Jury indicted Gustavo Perez-Paz ("Defendant") for being found in the United States without having obtained the express consent for re-application for admission into the United States from either the Attorney General of the United States, or the Secretary of Homeland Security, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Contending that § 1326(a) is facially unconstitutional, Defendant moves to dismiss the Indictment in this case, as well as the underlying deportation order. The parties fully briefed the issues, and the Court heard oral argument on September 19, 2019, during which the parties stipulated to the facts.

Defendant argues that the "found in" element of § 1326(a) renders the crime of illegal reentry an unconstitutional status offense. As a result, Defendant maintains that the Indictment relies on an unconstitutional statute, and the use of his administrative deportation order issued by an immigration judge as an element of a § 1326(a) offense violates his due process rights.

The evidence revealed that Defendant is a Honduran citizen who illegally entered the United States in 1991 without inspection near San Ysidro, California. Federal authorities became aware of Defendant's immigration status in 1993, after he was convicted of selling or transporting a controlled substance by a California state court. This conviction is an aggravated felony under the Immigration and Nationality Act ("INA"). *See* 8 U.S.C. § 1101(a)(43)(O). On August 30, 1993, Defendant was found by the Immigration and Naturalization Service ("INS") while serving his sentence, and, following removal proceedings, an Immigration Judge ordered that Defendant be removed from the United States to Honduras on December 6, 1994. Defendant was deported for the first time on January 6, 1995. He did not request any administrative relief or judicial review of the deportation order before he was deported.

Defendant later reentered the United States at an unknown date and location. Thereafter, he was arrested in 2011 and charged with illegal reentry following removal and conviction of an aggravated felony. On April 13, 2012, Defendant pled guilty to a single count of illegal reentry following removal, which resulted from a conviction of an aggravated felony. As a consequence, he was deported for a second time on July 23, 2013. Defendant subsequently reentered the United States without authorization for a third time, and, on May 2, 2018, Immigration and Customs Enforcement ("ICE") was advised that he had been arrested on felony hit-and-run charges in Chesterfield County, Virginia. Defendant is again before this Court, charged with illegal reentry following removal and conviction of an aggravated felony, in violation of 8 U.S.C. §§ 1326(a),

(b)(2).¹ Defendant asserts several facial challenges to the statute underlying his prosecution.

In order to convict a defendant of an offense under 8 U.S.C. § 1326(a), the government must demonstrate that the defendant was previously "denied admission, excluded, deported, or removed or [] departed the United States while an order of exclusion, deportation, or removal [was] outstanding" and then subsequently "enter[ed], attempt[ed] to enter, or [was] at any time found in, the United States" without proper authorization. 8 U.S.C. § 1326(a); *United States v. Guzman-Velasquez*, 919 F.3d 841, 844 (4th Cir. 2019) (quoting § 1326(a)). Where a defendant's previous removal followed a conviction of an aggravated felony, the criminal penalties associated with the § 1326(a) prosecution may be enhanced. § 1326(b)(2).

Typically, in such a prosecution, a defendant may collaterally attack the previous deportation order, if such order serves as an element of the offense charged, pursuant to 8 U.S.C. § 1326(d). There are, however, several preconditions. That subsection states as follows:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

---

¹ On December 8, 1999, the Municipal Court of Charleston County, South Carolina convicted Defendant of driving under the influence, driving without a license, and driving with a suspended license. Later, on October 11, 2011, the General District Court of the City of Richmond/Manchester convicted Defendant of driving while intoxicated. "[I]t [is not] necessary that the Court be requested to take judicial notice of a fact before it is authorized to do so. The Court may take judicial notice *sua sponte*." *United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964). Accordingly, the Court takes judicial notice of these convictions.

3

> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). "These requirements are listed in the conjunctive, so a defendant must satisfy all three in order to prevail." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005) (quoting *United States v. Wilson*, 316 F.3d 506, 509 (4th Cir. 2003)). "However, if the defendant satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *Id.*

Defendant's challenge focuses on two arguments, both of which are purely legal. First, Defendant argues that the "found in" provision of § 1326(a) is an unconstitutional status offense. (Def.'s Mot. 1–4, ECF No. 20; Def.'s Reply 1–5, ECF No. 27.) Second, Defendant contends that a law may not constitutionally provide for an administrative adjudication to be an element of a crime. (Def.'s Mot. 4–19, ECF No. 20; Def.'s Reply 5–7, ECF No. 27.) The Court will address each argument in turn.

Defendant first contends that indictments in § 1326(a) prosecutions are unconstitutional because § 1326(a) does not require a volitional act. He claims that, in § 1326(a) prosecutions, the charges turn entirely on the defendant's voluntary conduct (specifically, voluntary reentry). Yet, § 1326(a) only includes the phrase "found in," and Defendant maintains that the absence of "voluntary reentry" from § 1326(a) renders the provision unconstitutional because "found in" does not constitute a volitional act.

Proceeding under this theory, Defendant relies on *Lambert v. California*.[2] 355 U.S. 225 (1957). In response, the government counters that *Lambert* is distinguishable and does not support Defendant's constitutional argument. This Court agrees.

In *Lambert*, the Los Angeles Municipal Code contained a provision that made it unlawful for any person who had been convicted of a felony to remain in the city for more than five days without registering as a convicted person. *Id.* at 226. The Supreme Court found the provision unconstitutional because it was based on passive conduct and did not require that the defendant have knowledge of the statute before being convicted of such an offense. *Id.* at 229–30 ("Where a person did not know of the duty to register and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process.").

Defendant's case, and prosecutions of the same ilk, are directly at odds with *Lambert*. The defendant in *Lambert* had no knowledge that her acts were unlawful, and there were no circumstances that would lead her to become aware of the law's requirements. In the case of prosecutions under § 1326(a), defendants cannot plausibly contend that they are unaware that their presence in the United States is illegal.

Specific knowledge of a deportation order is a prerequisite to prosecution under § 1326(a). Defendants are the subject of § 1326(a) prosecutions because they reenter *despite the fact* that they were aware they were not permitted to do so. For example, in this case, Defendant was the subject of two prior deportation orders, which demonstrates

---

[2] Defendant also relies on *Robinson v. California*. 370 U.S. 660 (1962). Because the thrust and key elements of *Robinson* are the same as *Lambert*, the Court need only address *Lambert* at length.

5

that he had knowledge that he was not permitted to return to the United States. That defendants in § 1326(a) prosecutions necessarily have such knowledge is what differentiates prosecutions under this provision from the those at issue in *Lambert*.

Furthermore, other courts addressing this issue have similarly rejected Defendant's constitutional challenge. *See United States v. Tovias-Marroquin*, 218 F.3d 455, 457 (5th Cir. 2000); *United States v. Reza-Bautista*, No. 99-5035, 1999 WL 717988 at *1 (6th Cir. 1999); *United States v. Ayala*, 35 F.3d 423, 425 (9th Cir. 1994). "[The defendant's] reliance on *Lambert* is misplaced because it is undisputed that [the defendant] knew it was illegal to re-enter the United States after his deportation." *Tovias-Marroquin*, 218 F.3d at 457 (quoting and adopting the analysis in *Ayala*, 35 F.3d at 426).

Finally, even beyond this distinction, Defendant's argument fails for another, more fundamental reason. *Lambert* involved a statute based upon passive conduct, whereas § 1326(a) clearly requires a volitional act. Other reviewing courts have held that the voluntary act of reentry is logically inferable from a defendant alien's presence in the United States. *See United States v. Alvarez-Ulloa*, 784 F.3d 558, 571 (9th Cir. 2015); *United States v. Hernandez-Hernandez*, 519 F.3d 1236, 1241 (10th Cir. 2008); *United States v. Rivera-Sillas*, 417 F.3d 1014, 1020 (9th Cir. 2005). "[A defendant's] presence in the United States gives rise to a natural, common sense inference that his or her presence was intentional in the very limited, Section 1326 sense. After all, those crossing the border usually do so intending their own physical actions." *Hernandez-Hernandez*, 519 F.3d at 1241. This Court is unpersuaded by Defendant's invitation to find differently in this case.

Thus, as the government argues, the immediate case and *Lambert* are easily distinguishable. Consequently, for the reasons given, the Court finds that the "found in" provision of § 1326(a) is constitutional.

Defendant next contends that a law may not provide for an administrative adjudication to be an element of a crime without running afoul of the Constitution. He argues that such procedure permits a criminal defendant to be exposed to penalties based upon facts adjudicated under a preponderance of the evidence standard, which is the deferential standard of review applied to removal orders because they are the products of civil proceedings, rather than proven beyond a reasonable doubt, the stringent standard applied to facts in a criminal prosecution.

Defendant relies on *United States v. England*. 347 F.2d 425 (7th Cir. 1965). In *England*, the government was required to prove the existence of a valid tax assessment in order to succeed in its prosecution under various provisions of the Internal Revenue Code of 1954. *Id.* at 438; *see also id.* at 430 ("There is no doubt that a valid assessment, and proof thereof, was an essential element of the case against appellants . . . . We have to show there was an assessment, a legal assessment."). The trial court instructed the jury that the tax assessments introduced by the government were valid, but the Seventh Circuit reversed, holding that the validity of the assessment was a determination for a jury. *Id.* at 435–36.

Defendant's reliance on *England* is misplaced. In *England*, the validity of the tax assessment levied on the defendants was "an essential element of the case." *Id.* at 430. Yet, in Defendant's case and all prosecutions under § 1326(a), the lawfulness of the

deportation order is not at issue—nor is it even an element of the offense charged. *See United States v. Alvarado-Delgado*, 98 F.3d 492, 493 (9th Cir. 1996) (holding that the lawfulness of the predicate deportation is not an element of the § 1326 offense). Here, in contrast, Defendant contests the *use* of an administrative adjudication (his deportation order) in the criminal proceeding against him, whereas the defendants in *England* challenged the *validity* of the administrative adjudication itself (the tax assessment). Thus, the elements of proof in § 1326(a) prosecutions are substantively different from the elements of proof that were required in *England*.

Defendant is correct, however, that the fact of the deportation order need not always be accepted as conclusive. *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). In *Mendoza-Lopez*, several defendants being prosecuted under § 1326(a) moved to dismiss their indictments by collaterally attacking their deportation orders, arguing that they were denied fundamentally fair deportation hearings in contravention of the Due Process Clause of the Fourteenth Amendment. *Id.* at 831–32. The Court held that "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." *Id.* at 839. Focusing on the availability of effective judicial review, the Court further confirmed that the lawfulness of the predicate deportation is not an element of the § 1326 offense. *Id.* at 834–35 ("The language of the statute . . . suggests no such limitation. . . .").

Cases such as Defendant's involve fundamentally different circumstances than those in *Mendoza-Lopez* for two reasons. Where a § 1326(a) defendant as in this case has

8

not alleged constitutional infirmities associated with his deportation hearings, he has not been denied judicial review. Defendant Perez-Paz failed to avail himself of opportunities to reopen his deportation proceedings.

A defendant in § 1326(a) prosecution may challenge the lawfulness of the deportation order underlying his § 1326(a) prosecution pursuant to § 1326(d). Unlike the circumstances presented to the defendants in *Mendoza-Lopez*, a statutory mechanism now exists for § 1326(a) defendants to contest the use of their deportation orders where their deportation proceedings were not conducted in conformity with due process. *See* § 1326(d). This, too, distinguishes the cases of § 1326(a) defendants from the circumstances surrounding one of the defendants in *England*, for whom "no such statutory method of relief" was available. 347 F.2d at 439 (noting that administrative review of the validity of the tax assessment had not been not available to one of the defendants). Thus, at base, it appears Defendant simply quarrels with the fact that other § 1326(a) defendants may have been deported without an adequate remedy.

Defendant's only remaining contention is that deportation orders embody an unconstitutional degree of discretion. However, as the court in *United States v. Esparza-Ponce* noted, where a defendant may seek review of a deportation order, there is no basis to conclude that the order is unreviewable or the subject of unfettered discretion. 7 F. Supp. 2d 1084, 1094 (S.D. Cal. 1998).

> An alien can appeal to the BIA and then to the United States Court of Appeals for the appropriate circuit. The alien can even seek review in the United States Supreme Court. If the alien was denied access to this appellate process, the alien can have judicial review of the deportation order in the district court prior to trial.

*Id.* These opportunities for review fully satisfy the requirements of *Mendoza-Lopez*.

The Ninth Circuit is in accord, having rejected such a due process challenge three times. *See United States v. Bahena-Cardenas*, 411 F.3d 1067, 1073 (9th Cir. 2005); *United States v. Lara-Aceves*, 183 F.3d 1007, 1010–12 (9th Cir. 1999); *United States v. Robles-Sandoval*, 637 F.2d 692, 693 (9th Cir. 1981). In doing so, it has stated that "[l]imitations on a defendant's ability to collaterally attack a deportation proceeding in a § 1326(a) prosecution do not limit the due process protections afforded to aliens at the underlying deportation proceeding, nor do such limitations entirely preclude judicial review of deportation proceedings." *Lara-Aceves*, 183 F.3d at 1012. This Court agrees. Accordingly, the Court finds that use of a deportation order as an element of a § 1326(a) offense is constitutionally sound.

Based on the foregoing analysis, Defendant's Motion to Dismiss the Indictment will be denied. An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
Senior United States District Judge

Date: Oct. 16, 2019
Richmond, Virginia